Good morning. The first case this morning is 053312, Hughes v. the Department of Labor. Mr. Carter. Thank you, Your Honor. This is an appeal from the Ameri-Systems Protection Board challenging the removal of Mrs. Hughes. In this situation, I believe that there is what is called a threshold jurisdictional issue. In other words, the government had previously entered into a settlement agreement of Mrs. Hughes' claims of disability discrimination. Part of that settlement agreement was an accommodation for her illness. But do you contend that the settlement agreement precluded the government from changing her job description? Your Honor, the problem we face with this is the answer is yes, because the job description was an accommodation. It was a... Well, let me ask you something else, though. Does the settlement agreement explicitly state that there shall be no change in her job description? I gather the answer to that question is no. The answer to that question is no, Your Honor. But you claim it's implicit. Our claim is a little bit murkier than that, and what we rely on is 614-504 and the very nature of a settlement agreement itself. Now, we are not saying that the government cannot change an employee's job description, but what we are saying in this case is that where that job description overlaps into an accommodation... But let me tell you what my problem with your position is, that the arbitrator explicitly found, I believe, that the job description, the new job description, required the ability to use a computer. He found that... I understand that, Your Honor. However, there are at least, there's the testimony of both supervisors who recommended Mrs. Hughes' removal. Both of them, at least one of them, I think, admitted that the use of a computer was not, quote-unquote, was not an essential element of her position. But, see, the problem I have is that the record before the board, which is what we have to base our decision on, because we're reviewing the board, not the arbitrator's decision, the first item of it lists what consists, what the board, what the record comprises, and neither the settlement agreement nor the collective bargaining agreement is in it. Well, that's the problem. So it seems to me, in these circumstances, I think we have to accept the arbitrator's decision, the arbitrator's finding, if you will, that the job, the new job description required the use of a computer. And I take it that when she is saying she wants an accommodation, she's never suggested that she could somehow perform the job doing some computer work. As I understand it, what she was complaining about is she said she was entitled to an accommodation under which she wouldn't have to use a computer. Is that right or is that wrong? Is that what she's contending? All right. Let's take a step back, because what the court is doing is running me through 4303 and 4302, 5 U.S.C. And whereas here, the employee has never been given an opportunity to perform. Well, when you say to perform, to perform with a computer or without a computer? Your Honor, there were other duties involved. Yes, but certainly... And yes, with a computer, because they were supposed to, and was admitted, they never put, I think they call it an employment physicist, on the job to see if there was radiation given off by the computers and whether or not Ms. Hughes was subject to that and whether an accommodation could be made based upon that. If anything, given the fact that there has never been any form of an evaluation of her workstation itself by a physicist, I think they call them employment physicists, there should have been an opportunity for them to take a look at it. They didn't do that. What happened here was they read through the doctor's reports, they made up their mind, and they terminated her. Now, both doctors, both doctors said that Ms. Hughes, they were not recommending Ms. Hughes's removal. Both doctors said Ms. Hughes could perform the duties of her position with an accommodation. Given that, I believe that what should have happened is at that point they should have tried to work out what an accommodation was. But the accommodation, as I understand it, the accommodation you're suggesting should have been worked out was an accommodation not involving the use of a computer, and yet the new job description, I gather, said she had to use a computer. We've attached a new job description. Pardon? The new job description is Exhibit 11, Your Honor. It is? Yes. Is part of the record before the board? I don't know. Well, that's a critical thing because we're reviewing the form. It's my understanding, at least, I do know that there is testimony where the agreement, the collective bargaining agreement, was admitted as evidence before the board. No, no, not before the board. Before the... Before the arbitrator. Before the arbitrator. The arbitrator himself... But it couldn't review any issue relating to the collective bargaining agreement because that agreement wasn't before it. Well, I understand, Your Honor. You know, I'm reading, I'm trying to understand how MSKB can say that this is not in the record when the record reflects the admission of the particular item into evidence before... You cannot say this is part of the record on which you should review the arbitrator's decision. That's, I mean, we're limited to reviewing the board's decision. I understand the court's... And the board, in turn, said we can't review some of these issues because it's not, the record doesn't include these documents. I still think, Your Honor, that a remand is in order in this and set aside in order to comply with 4302. And in order to, at least, in light of what the doctors have said, that what has to happen here. The doctor said there was no recommendation for this employee's removal. Up until the date of her removal, she was a satisfactory employee. There has not been any determination as to her ability, no matter what she says. If I tell my employer I can't do something, they're going to put me on a pip. They're going to take me through the process so they can at least have a record to show that we gave this person every opportunity. And this is one of the rights that the employees have under the 1968 Civil Service Reform Act. And that is to be given a full opportunity to perform the duties of their position. Yes, sir. You're into your rebuttal time and you wanted to save it? I'll save it, Your Honor. All right. Thank you. Mr. McNamara. May it please the court, the board's decision here was correct and it should be affirmed. The agency properly removed Ms. Hughes from her position as a technical information specialist because she could not perform the duties of her position. Petitioner now raises something of a superficially compelling minor premise that ignores the major premise. That is the petitioner tells a story that on its own sounds sort of compelling but ignores the law, which here is a love-shouldn't-be Department of the Navy, an en banc decision of this court in which the court held that the procedures of Chapter 43 do not apply to a removal under Chapter 75. Under Chapter 75, an agency needs to make two showings. They need to show that a nexus exists between an employee's inability to perform, excuse me, between an employee's medical condition and deficiencies in the employee's performance. That's the first showing. Then the agency needs to show that there's a nexus between deficiencies in the employee's performance and the efficiency of the service. Is the key to this case basically the requirement in the new job description that she be able to use a computer? That's correct. That's a critical element of her job. That's correct. It's sort of as though one of the critical elements of a secretary's job is the ability to use a typewriter or a computer to be able to produce the written work. That's correct. And because Ms. Hughes had a medical condition which prevented her from performing that critical element of her job, the agency clearly showed that there was a nexus there between the condition and the critical element of her job. And then there's also a nexus between that critical element and the efficiency of the service because the way that Ms. Hughes performed her job was highly inefficient, as the arbitrator found. He went through and looked at the ways in which Ms. Hughes was essentially a research librarian. As I understand it, part of the way in which she performed her job was to have other people do her job when it was necessary to resort to the computer. I suppose you'd say, well, that's not performing her job. That's someone else performing her job. That's correct, Your Honor. But, Mr. McNamara, that might be correct, but for 10 years, though, she was deemed to be successful in her position, which did include partial use of the computer. So why, all of a sudden, when the job description was changed to include the specific use of the computer, she all of a sudden became inefficient? Well, that's correct, Your Honor. For seven years, from 1993 until 2000, when her position description changed, the agency accommodated Ms. Hughes by building her a clean room, removing computers from around that room, helping her to purchase an air freshener for the room, an air purifier for the room. But then the agency changed its mind, essentially, and decided she got a new supervisor who decided that this was inefficient. And the settlement agreement that the agency entered into simply has no bearing upon the question of whether Ms. Hughes' performance was inefficient. The agency decided it was. It then waited two and a half years before removing her. In those two and a half years, it explored the possibility of accommodation, consulting with numerous doctors and working with Ms. Hughes to try to figure out a way to keep her employed. And there was just simply nothing. They just simply could not work in that room. And so ultimately, that's why the agency decided that Ms. Hughes' performance was deficient, and that deficiency affected the efficiency of the service. Was she ever rated deficient during that two and a half years? She was not rated deficient. And that is Petitioner's central argument, that she was never rated under Chapter 43. She was not put on a performance improvement plan. The problem with that argument is that this court, in Lovshin, said that when an agency removes an employee under Chapter 75 for such causes as will promote the efficiency of the service, it does not have to conduct a performance improvement plan. It just simply does not have to. It has to prove by preponderance of the evidence that the employee's inability to perform affects the efficiency of the service. But it does not have to jump through the procedural hoops of Chapter 43. That was the whole point of the Civil Service Reform Act in the early 1980s, was to allow agencies greater flexibility in their hiring and firing of employees and not to put, for the benefit of the public, not to put the burden upon agencies to do things like a performance improvement plan. But isn't the agency required every year to rate their employees? That may be the case. I'm not sure if that's the case. But that is—even if that is true, that's irrelevant here because Chapter 43 procedures were not used. Chapter 75 procedures were used. And as the arbitrator found, the agency demonstrated by a preponderance of the evidence that Ms. Hughes' inability to perform affected the efficiency of the service. That's what the agency was required to show. All of the Chapter 43 stuff is irrelevant. It's also the case, however, that Ms. Hughes was unable—physically unable to perform the duties of her job, even if the agency had put her on a performance improvement plan. The agency's thinking, I think, was that putting her on a performance improvement plan would have been futile because she refused to do her job or she could not do her job. And therefore, some sort of performance improvement did not make any sense. It's as if someone has a lifting restriction. They can't lift more than 20 pounds. Well, you say she refused to do her job, but what we're talking about really is how you perform your job. And I take it what—she didn't say, I won't perform my job as a reference librarian. What she seems to be saying is, I can perform this job adequately and properly without using a computer. And I suppose the agency's answer to that is, well, that was true under your old job description, but now an essential element of your job is that you use a computer. And you don't say you try to use a computer. You say, I can't use a computer. That's correct, Your Honor. She was certainly willing to perform a job, but she wasn't willing to perform her job. As you just said, it was a critical element of her position that she use a computer. And, you know, you can look at the time period here and the explosive rise of the Internet from 1993 until 2003 when Ms. Hughes was removed. And that can perhaps sort of explain in a larger sense why the agency was willing to accommodate her at first in 1993, because computers weren't as important. But by 2000, they became vital to this type of job. And the agency was simply required to have its research librarians use computers. And Ms. Hughes would not do so. And so the agency's removal of her was appropriate. Ms. Hughes' reliance upon the settlement agreement is misplaced. That settlement agreement, A, is not in the record. Neither is the collective bargaining agreement. And this Court, therefore, cannot review those documents. But, B, even if this Court were to look at the documents, certainly nothing in the settlement agreement provides Ms. Hughes with a guarantee of permanent employment. And that is what Ms. Hughes' argument is. It's essentially this agreement. Not quite. As I understand her argument is, what he said this morning, was that even though the settlement agreement does not explicitly preclude changing her job description, it was inherent in the nature of the agreement and the kind of a dispute that was being settled, that despite the settlement agreement, they would attempt to give her a chance to show that she could perform the duties of the position without regard to using a computer. I take it that's the argument, that the settlement agreement, in effect, contemplated that there would be some continuation of the old system. Well, you could, I suppose, read the settlement that way. But the terms of the agreement, I think the plain language of the agreement, refutes that argument. All that the agency agreed to there was these various accommodations to move a computer away from her office, to construct her a clean office, to provide her leave while her office was painted, to help her purchase an air cleaner. The settlement agreement, by its terms, does not restrict the agency in the future. It just simply provides, we will do these things if you drop your EEOC complaint. It just simply, by its terms, it actually contains language that says this agreement establishes no precedent for any other matter at the Department of Labor. What number is that? It's in tab eight of the… Eight? Yes. It's on page 108. And again, this is not in the record, but… Well, here's the settlement agreement. It's at page 105. At 105. And if you look at page 108, the very last sentence, and the sentence before that, an admission or an adjudication with respect to any allegation made by either party or to any allegation of wrongdoing, misconduct, or liability on the part of the Department or its employees. This agreement establishes no precedent for any other matter at the Department of Labor. The agreement simply does not say what Petitioner says it says. And the collective bargaining agreement is really the same. The collective bargaining agreement provides only as much as Chapter 43 provides. And Chapter 43 is inapplicable here, and so is the collective bargaining agreement. Again, the agency had only to follow, was required only to follow the procedures of Chapter 75. It did so, and its decision should be affirmed. The arbitrator's decision finding that should be affirmed, and the board's decision upholding the arbitrator's decision should also be affirmed. Thank you. Thank you. Mr. Carter? First of all, Your Honor, I believe the court is going to have to reach a conclusion as to what, under what authority, a federal agency can set aside congressionally promulgated regulations by OPM. 1614.504 says that those types of settlement agreements are final and binding on the agency. MSPB says that once you entered into it, they, you can't bring that complaint back. You have no other relief available to you, both parties. But what is in the agreement? To wait a decade, and to allow the agency to set aside a settlement agreement because it's irrelevant or otherwise, would at least require a court order. Would at least require a court order, and the agency would at least have to explain why. I think the court is right when it says that there are certain things in this agreement which reference direct court's attention to the Exhibit 8. You're responding to counsel's argument. I'm responding to argument. The point is that this is not in the record. It was a, even if it were, argument. So let's just stick to refuting. All right. This is the only thing I'm doing. I'm just trying to at least, I'm talking about what is a settlement agreement within the EEO context. What is its impact on future employees? Are we going to say that if I enter into an agreement with the government two days from now, four years from now, when it becomes inconvenient that the government is free to break that agreement with the employee? Well, how about the language that he quoted at the end of the, on page 108 of the appendix? I believe, Your Honor, that that That pertains to this, to your client. It pertains to my client, but what it does, it's like any other matter. This is boilerplate. This is the normal boilerplate that when you sign an agreement It may be boilerplate, but that doesn't change its effectiveness, does it? No, it doesn't, Your Honor. And the thing is, the real crux of this matter and the real reasons why she settled this case is contained in paragraph 6. The agency agrees to explore with the complainant, consistent with 29 CFR 1614-203, developing standards and elements which do not require the use of a computer in performing the essential functions of her position of technical information specialist. They require her to fully cooperate, if you read on. Yes, but that sentence that you, the portion of that sentence you read begins, two lines ahead of you, while not waiving the right to challenge complainant's handicapped or qualifying handicapped status in the future if necessary. So it seems to me what they're saying is we will explore whether there's some way we can allow her to continue doing the work. When did this become a final order, Your Honor? We can re-examine that at a later point. Then we have to deal with the issue of merger and bar. We have to deal as to when the government waived any right to enforce the provisions of this. Well, again, it seems to me it all comes down to an argument on your part as to what the settlement agreement requires, but the agreement is not before us. I understand that, Your Honor. I mean, I understand that. What I am saying, let's go back. Let's go back to the fact that both doctors, when he says that she medically could not do this job, both doctors said that the plaintiff, I mean the appellant, they were not recommending her removal. They were suggesting that given an accommodation, that was Dr. Myerson and Dr. Pleasant, both of them told the supervisors that, one, given an accommodation, this employee can perform the duties of her position. When counsel says that this is a Chapter 75, Chapter 75, Your Honor, is very, very clear. That is for cause. Well, this was for cause. I doubt it, Your Honor. They said that the cause was that she couldn't perform the duties of her position. They have never established the nexus. In order for there to be a nexus, there has to be one. Even if they change the job description, Your Honor, the case law requires that they put together some form of performance standards. There's no evaluation. There is nothing there. You can't say that this is Chapter 75 because she can't perform the duties of the position. The law requires that there be a nexus, and there is no nexus. There is no nexus here. It is nonexistent. The doctor said, fine, she can perform the duties of the position with an accommodation. If they are unable to accommodate, it presents a different story. In order for that to happen, there has to be an evaluation of her opportunity to perform under 4303. Only then is the agency free to remove her. It is not here. The supervisors, Gorin and McCulley, both said they didn't even know what they were doing. McCulley said, well, no, it wasn't for cause. This is because she can't perform. So both of them eliminated by their own testimony, Chapter 75. I am not arguing with the government. I am saying that the government has not established or met its burden in this case, Your Honor. And in not meeting its burden, when you say that an employee is unable to perform, that means I'm too sick to perform it. That means I've given you an opportunity to perform the duties of that position. Thank you, Mr. Carter. Thank you, Your Honor. The case is submitted.